# In the United States Court of Federal Claims

No. 18-219C
(E-Filed: June 7, 2018)[1]

|  |  |
|---|---|
| CENTERRA GROUP, LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| PARAGON SYSTEMS, INC., | ) |
| Intervenor-defendant. | ) |

Post-Award Bid Protest; Corrective
Action on Remand to Agency;
Improper Discussions Held Only with
Awardee; Injunctive Relief.

Kara L. Daniels, Washington, DC, for plaintiff.  Sonia Tabriz and Amanda J. Sherwood,
Washington, DC, of counsel.

Eric P. Bruskin, Senior Trial Counsel, with whom were Chad A. Readler, Acting
Assistant Attorney General, Robert E. Kirschman, Jr., Director, Douglas K. Mickle,
Assistant Director, Civil Division, United States Department of Justice, Washington, DC,
for defendant.  John Caterini and Barry C. Hansen, Office of General Counsel, United
States Department of Justice, Washington, DC, of counsel.

Katherine S. Nucci, Washington, DC, for intervenor-defendant.  Scott F. Lane and Jayna
M. Rust, Washington, DC, of counsel.

---

[1]     This opinion was issued under seal on May 25, 2018.  Pursuant to ¶ 8 of the
ordering language, the parties were invited to identify source selection, proprietary or
confidential material subject to deletion on the basis that the material was
protected/privileged.  The proposed redactions were acceptable to the court, with some
minor modifications intended to preserve the structure, but not all of the content, of the
sentences that were redacted.  All redactions are indicated by brackets ([ ]).

<u>OPINION AND ORDER</u>

CAMPBELL-SMITH, Judge.

This post-award bid protest, at the outset, challenged the award of a task order to Paragon Systems, Inc. (Paragon), the intervenor-defendant in this case. The government initially refused to stay transition activities, which were focused on the change-over from the incumbent contractor, Centerra Group, LLC (Centerra), to Paragon, during the pendency of Centerra's protest.[2] <u>See</u> Scheduling Conference Recording, ECF No. 9. The parties therefore agreed to accelerate the briefing of this protest.

Before the briefing of the parties' dispositive motions was complete, however, defendant filed an unopposed motion to remand the issues raised by Centerra to the United States Department of Justice (DOJ), the procuring agency. <u>See</u> Remand Motion, ECF No. 25. DOJ wished to "reconsider its award decision in light of" proposal evaluation errors alleged by Centerra, and any other "issues raised by Centerra." <u>Id.</u> at 2. To this end, the government chose to voluntarily stay transition activities for thirty days, or more if needed, <u>id.</u> at 2-3, and issued a stop work order to Paragon. The government thereby voluntarily initiated a corrective action in response to Centerra's protest, but provided almost no details as to how DOJ would proceed with its corrective action. The court granted the motion. <u>See</u> ECF No. 28.

Centerra's protest now challenges both the corrective action taken by DOJ and the subsequent reaffirmation of DOJ's decision to award the task order to Paragon. DOJ's actions during the remand were characterized by the agency as a corrective action to reconsider its award decision in light of the evaluation errors identified by Centerra. Instead, the corrective action consisted of a fundamentally unfair and anti-competitive invitation to Paragon to revise its proposal so that Centerra's protest grounds would be rendered moot. No similar proposal revision opportunity was provided to Centerra. The court cannot find any justification in the Federal Acquisition Regulation (FAR), the bid protest decisions of this court, or in the decisions of the Government Accountability Office (GAO) for this arbitrary and capricious subversion of competitive principles. Centerra's protest of the agency's corrective action and the award decision founded on that corrective action must be sustained.

I.    Background[3]

---

[2]    Centerra and Paragon were the only two bidders for the task order.

[3]    The court's discussion of background facts here is limited to the facts essential for an understanding of the most salient issues in this protest. Mindful of the parties' need

A.     Solicitation

DOJ's solicitation (RFQ) sought contract guard services for certain DOJ facilities in the Washington, DC area.  See Administrative Record, ECF No. 20-2 at 26-210.  The procurement was "conducted under the General Services Administration (GSA), Federal Supply Schedule (FSS) program."  Id. at 28.  The RFQ stated that DOJ "may conduct discussions with all, or a limited number of the vendors."  Id. at 73.  The RFQ was amended a number of times, with initial proposals received from Centerra and Paragon on May 31, 2017.

B.     Two Rounds of Discussions and Revised Proposals

After the initial proposals were received, and after an "initial review" by the Technical Evaluation Panel (TEP), DOJ communicated with the offerors and requested responses to "issues/clarifications and or problems" identified by the agency.  ECF No. 20-3 at 310-17.  Centerra was asked to address a number of "serious concern[s]" about features of its proposal that did "not meet RFQ requirements," and Paragon was asked to address one weakness and several "unacceptable" features of its proposal.  Id.  The offerors' responses to DOJ's concerns, collectively, totaled over one hundred pages of documentation.  Id. at 318-422.  Although the government characterizes this sequence of events as requests for clarifications and then the submission of clarifications, in the court's view the agency thereby conducted a first round of discussions with the offerors, and allowed each offeror an opportunity to materially improve its proposal.

A formal technical evaluation of these revised and supplemented proposals was conducted by the TEP.  Out of a maximum ranking score of 100, Paragon scored [ ] points and Centerra scored [ ] points.  Id. at 425.  A price analysis of the proposals was also performed.  Id. at 436-42.  DOJ expressed concerns in the price analysis regarding a number of the offerors' costs, including the cost of equipment such as radios and cell phones.  Id. at 440-41.

A series of robust communications between the offerors and DOJ ensued.  First, DOJ asked for written responses to its concerns regarding each offeror's proposal.  ECF No. 20-3 at 443-84.  The agency noted that it would review the offeror's "updates," might engage in "discussion," if needed, and would require an "actual revised proposal" from each offeror.  Id. at 443, 462.  Once the agency received the offerors' responses, which collectively totaled about forty pages, DOJ then further addressed a few "minor items" with the offerors.  ECF No. 20-4 at 43-55.  The offerors were warned that once the

_____

for the quickest result possible, the recitation of facts in this opinion has been abbreviated.

agency issued its formal request for revised proposals, they would have seven calendar days to provide those proposals to DOJ.  Id. at 43, 49.

DOJ issued its request for revised proposals on October 27, 2017.  Id. at 394.  Full, formally revised proposals were received by DOJ on November 1, 2017.  Id. at 56-392 (Centerra's final proposal); 393-560 (Paragon's final proposal).  Although the government characterizes this sequence of events as mere clarifications of the offerors' proposals, the court sees this as a second round of discussions which produced Centerra's and Paragon's final proposals.  It is the offerors' final proposals that were evaluated by DOJ and that provided the foundation for the January 25, 2018 award of the task order to Paragon.  ECF No. 20-5 at 244-45.

C.     Evaluation of Final Proposals and Award

A detailed discussion of the evaluation scheme is not required to provide context for DOJ's award decision.  Of note here, Paragon's final technical score surpassed Centerra's initial technical score of [ ] points; Paragon ultimately received a technical score of 91 points, instead of its initial overall technical score of [ ] points.  Id. at 173.  Centerra's final technical score more modestly improved from [ ] to [ ] points, out of a maximum possible score of 100 points.  Id.  The offerors' prices were [ ], with Centerra's price at $[ ], and Paragon's price at $191,994,347.38.  Id. at 227, 229.

DOJ found that Paragon provided best value to the government, and awarded the task order to Paragon on January 25, 2018.  Id. at 240, 244.  Centerra was notified that it lost the competition on January 29, 2018.   Id. at 423-24.  Paragon's overall technical score and price were disclosed to Centerra, as well as the fact that there had been only two offerors.  Id. at 424.  Centerra requested a debriefing and received a written report in return.  The report revealed certain aspects of the agency's evaluation of Centerra's proposal, but contained no additional information regarding Paragon's proposal or the evaluation of that proposal.  Id. at 425-28.

D.     Protest Overview

Five days after Centerra received the agency's award report on February 8, 2018, it filed its protest in this court on February 13, 2018.  Procedurally, the litigation of this protest was unremarkable until the government requested a remand to DOJ.  The administrative record of the remand, which reaffirmed the award to Paragon, was filed on April 12, 2018.  See ECF No. 32-1.  The court entered a scheduling order for further proceedings which was largely based on the parties' recommendations.  ECF No. 31.

Pursuant to this order, Centerra filed a second amended complaint, ECF No. 40, and a memorandum in support of its post-remand motion for judgment on the administrative record, ECF No. 39-1, which rendered its previously-filed motion for judgment on the administrative record, ECF No. 23, moot.  Centerra also later filed its

response/reply brief, ECF No. 47.  Other briefing includes the government's cross-motion/response, ECF No. 43, and the government's reply, ECF No. 48, as well as Paragon's cross-motion/response, ECF No. 44, and Paragon's reply, ECF No. 49.  Oral argument was deemed unnecessary.  This matter is now ripe for decision.

II.    Legal Standards

A.    Judgment on the Administrative Record

Rule 52.1(c) of the Rules of the United States Court of Federal Claims (RCFC) provides for judgment on the administrative record.  To review a motion, or cross-motions, under RCFC 52.1(c), the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.  Bannum, Inc. v. United States, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005).  The court must make factual findings where necessary.  Id.  The resolution of RCFC 52.1(c) cross-motions is akin to an expedited trial on the paper record.  Id.

B.    Bid Protest Standard of Review

As the United States Court of Appeals for the Federal Circuit has stated, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2012)]:  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004) (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000)).  Under this standard, a procurement decision may be set aside if it lacked a rational basis or if the agency's decision-making involved a clear and prejudicial violation of statute, regulation or procedure.  Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1085-86 (Fed. Cir. 2001) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  Examples of arbitrary and capricious agency action include "when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (alteration in original).  "The arbitrary and capricious standard applicable [in bid protests] is highly deferential."  Advanced Data Concepts, 216 F.3d at 1058.

If "the trial court determines [that] the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract[,] . . . it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct."  Bannum, 404 F.3d at 1351.  Plaintiff bears the burden of proof, and must "show that there was a 'substantial chance' [plaintiff] would have received the contract award but for the

[government's] errors in the [procurement] process." <u>Id.</u> at 1358 (citations omitted).  If a protestor can show that there was a substantial chance that it would have won the contract award but for the procurement errors of the agency, prejudice has been established.  <u>Id.</u> at 1353 (citations omitted).  "Prejudice is a question of fact."  <u>Id.</u> (citing <u>Advanced Data Concepts</u>, 216 F.3d at 1057).

       C.      Injunctive Relief

As the Federal Circuit has held:

> In deciding whether a permanent injunction should issue, a court considers: (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

<u>PGBA, LLC v. United States</u>, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing <u>Amoco Prod. Co. v. Vill. of Gambell, Alaska</u>, 480 U.S. 531, 546 n.12 (1987)).

       D.      Pertinent FAR Provisions

           1.      Fairness

Fairness in government procurements is enshrined in a number of FAR provisions.  The general rule is stated in FAR 1.102(b)(3):  "[Procuring agencies shall] [c]onduct business with integrity, fairness, and openness."  48 C.F.R. § 1.102(b)(3) (2017).  The FAR instructs that "[a]ll contractors and prospective contractors shall be treated fairly and impartially but need not be treated the same."  48 C.F.R. § 1.102-2(c)(3) (2017).  The contracting officer is tasked with "[e]nsur[ing] that contractors receive impartial, fair, and equitable treatment."  48 C.F.R. § 1.602-2(b) (2017).  In FSS procurements such as this one, the agency must "[e]nsure [that] all quotes received are fairly considered."  48 C.F.R. § 8.405-2(c)(3)(iii)(C) (2017).

           2.      Communications with Offerors

In negotiated procurements, FAR 15.306, 48 C.F.R. § 15.306 (2017), provides definitions of the types of communications that may occur between the procuring agency and offerors once proposals have been received.  Although this protest does not involve a negotiated procurement that was conducted under the authorization of FAR Part 15, 48 C.F.R. pt. 15 (2017), the definitions of clarifications and discussions in FAR 15.306 are widely applied in a variety of procurement contexts.  <u>See, e.g.</u>, <u>Unisys Corp. v. United States</u>, 89 Fed. Cl. 126, 141 (2009) (after stating that FAR Part 15 did not apply in that case, relying, in part, on the FAR Part 15 definition of discussions to condone an agency's decision to not engage in discussions with the protestor where the protestor's

proposal had no "significant weaknesses" (citing <u>WorldTravelService v. United States</u>, 49 Fed. Cl. 431, 439-40 (2001))).  The court therefore relies on FAR Part 15, generally, to explain the difference between clarifications and discussions.

In relevant part, proposal <u>clarifications</u> are described in this manner:

(1) Clarifications are limited exchanges, between the Government and offerors, that may occur when award without discussions is contemplated.

(2) If award will be made without conducting discussions, offerors may be given the opportunity to clarify certain aspects of proposals (e.g., [certain types of past performance information]) or to resolve minor or clerical errors.

48 C.F.R. § 15.306(a)(1)-(2).

On the other hand, some exchanges are "undertaken with the intent of allowing the offeror to revise its proposal." 48 C.F.R. § 15.306(d).  These discussions are described, in relevant part, in the following manner:

(1) Discussions are tailored to each offeror's proposal, and must be conducted by the contracting officer with each offeror within the competitive range.

(2) The primary objective of discussions is to maximize the Government's ability to obtain best value, based on the requirement and the evaluation factors set forth in the solicitation.

(3) At a minimum, the contracting officer must, subject to paragraphs (d)(5) and (e) of this section and 15.307(a), indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond.  The contracting officer also is encouraged to discuss other aspects of the offeror's proposal that could, in the opinion of the contracting officer, be altered or explained to enhance materially the proposal's potential for award.  However, the contracting officer is not required to discuss every area where the proposal could be improved.  The scope and extent of discussions are a matter of contracting officer judgment.

<u>Id.</u>  A fundamental fairness principle governing communications in this setting is that the contracting officer "shall not engage in conduct that . . . [f]avors one offeror over another." 48 C.F.R. § 15.306(e).

Finally, in negotiated procurements, once discussions have occurred, proposal revisions are submitted to the agency. 48 C.F.R. § 15.307.  In relevant part, FAR 15.307 states that

[t]he contracting officer may request or allow proposal revisions to clarify and document understandings reached during negotiations. At the conclusion of discussions, each offeror still in the competitive range shall be given an opportunity to submit a final proposal revision.

48 C.F.R. § 15.307(b).

III.     Analysis of the Merits

A.     FAR Subpart 8.4 Procurements

The government and Paragon argue that the communications between Paragon and DOJ during the remand were proper because of the type of procurement at issue here, a GSA FSS task order RFQ conducted pursuant to FAR Subpart 8.4, 48 C.F.R. subpt. 8.4 (2017). See ECF No. 43 at 28; ECF No. 44 at 31-34; ECF No. 48 at 7-10; ECF No. 49 at 2-3, 6, 8-9. Underlying this argument is the premise that there are fundamental differences between purchases made through the FSS, under FAR Subpart 8.4, and negotiated acquisitions under FAR Part 15. The premise is sound, in that an agency that purchases services through the FSS is not bound to follow the procedures or obey the restrictions imposed by FAR Part 15. See FAR 8.404(a); Sys. Plus, Inc. v. United States, 68 Fed. Cl. 206, 210 (2005) (Systems Plus) ("We therefore find it persuasive that subpart 8.404(a) explicitly exempts supply schedule procurements from Parts 13 (with minor exceptions), 14, and 15."). However, an agency's exemption from FAR Part 15 is not absolute -- an "agency can elect to use procedures from these other parts [such as FAR Part 15], [although] they are not presumptively applicable." Systems Plus, 68 Fed. Cl. at 210.

Where, as here, an agency has already conducted two rounds of discussions with offerors remaining in the competition, and allowed proposal revisions after each round, the overwhelming weight of authority is that the agency must conduct any future discussions in conformance with the fairness principles enshrined in FAR Part 15, notwithstanding the fact that the procurement is otherwise governed by FAR Subpart 8.4. This is true for the simple reason that the relevant provisions of FAR Part 15 provide safeguards against communications with the agency which unfairly favor one offeror over another. The court turns first to persuasive GAO precedent on this issue.

As the GAO explained in another bid protest involving DOJ, FAR Part 15 comes into play when the agency engages in discussions during an FSS procurement:

Since the RFQ provided for the issuance of a task order against the selected vendor's FSS contract, the provisions of Federal Acquisition Regulation (FAR) subpart 8.4 (governing FSS acquisitions) apply. However, the record establishes that [DOJ] treated the vendors' responses as if it were conducting a negotiated procurement. Under these circumstances, while the provisions

> of FAR part 15 (governing contracting by negotiation, including
> requirements concerning meaningful discussions) do not directly apply, we
> will analyze [the protestor's] contentions by the standards applicable to
> negotiated procurements. Uniband, Inc., B-289305, Feb. 8, 2002, 2002 CPD
> ¶ 51 at 3-4.

TDS, Inc., B-292674, 2003 CPD ¶ 204, 2003 WL 22764873, at *4 n.3 (Comp. Gen. Nov.
12, 2003). It is of no consequence that the agency refrains from accurately labeling its
discussions as discussions, and instead characterizes the exchanges as clarifications. Id.
at *4. The court finds the reasoning in TDS to be perfectly applicable to the situation
here, where DOJ conducted two rounds of discussions with the offerors, with
accompanying proposal revisions, before award, and then conducted another round of
discussions only with Paragon during the remand, and offered Paragon, but not Centerra,
an opportunity to revise its proposal a third time.

The caselaw from this court is also generally supportive of testing discussions
undertaken during FSS procurements by the fairness principles enshrined in FAR Part 15,
although adherence to FAR Part 15 procedures is not required. A good example is
provided by Distributed Solutions., Inc. v. United States, 106 Fed. Cl. 1 (2012), aff'd,
500 F. App'x 955 (Fed. Cir. 2013). This court noted that no discussions were required in
FAR Subpart 8.4 procurements. Id. at 15 (citation omitted). And, even if discussions
occurred, the fact that the agency "conducted discussions did not mean it had to comply
with the strict procedures of FAR Part 15." Id. (citations omitted). Nonetheless, the
court examined the discussions which occurred in that FAR Subpart 8.4 procurement to
ensure that they were fair. Id. at 16 n.9.

Thus, this court, while refusing to shoehorn FAR Subpart 8.4 procurements into
the procedures outlined in FAR Part 15, will "review [the agency's] actions to ensure that
[the agency] did not violate the requirement of fundamental fairness in the procurement
process by conducting discussions with [only the awardee]." Unisys, 89 Fed. Cl. at 140;
see also Allied Tech. Grp., Inc. v. United States, 94 Fed. Cl. 16, 44 (2010) (Allied
Technology) (stating that instead of testing a FAR Subpart 8.4 procurement for
compliance with FAR Part 15, "[t]he Court will overturn an agency's action only where it
violated the fundamental fairness of the procurement process") (citation omitted), aff'd,
649 F.3d 1320 (Fed. Cir. 2011). In Allied Technology, those fundamental fairness
requirements led the court to apply the relevant definitions of clarifications and
discussions that are found in FAR Part 15. 94 Fed. Cl. at 44 (citing FAR 15.306). As is
the case at GAO, this court has determined that it matters not whether the agency
characterizes discussions as clarifications because "the actions of the parties . . .
determine whether discussions have been held." Id. (citing Career Training Concepts,
Inc. v. United States, 83 Fed. Cl. 215, 230 (2008)).

The court recognizes that the application of these fairness principles varies
according to the specific facts of each protest. To the extent that there may be some

disagreement as to the propriety, in general, of looking to FAR Part 15 when reviewing the fairness of discussions held in FAR Subpart 8.4 procurements, the court finds that in this case, recourse to FAR Part 15, at least for the relevant definitions of clarifications and discussions, is the only sensible approach. Compare Allied Technology, 94 Fed. Cl. at 44 (relying on FAR 15.306 to distinguish between clarifications and discussions), with IBM Corp. v. United States, 119 Fed. Cl. 145, 158 (2014) (relying not on FAR Part 15 but on FAR 1.102-2(c)(3), to determine whether communications in that FAR Subpart 8.4 procurement were fair). Further, to the extent that a rule could be discerned in any decision of this court that the fairness principles enshrined in FAR Part 15 are inapplicable to any FAR Subpart 8.4 procurement, such a rule is neither binding in this case, e.g., W. Coast Gen. Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994) (citations omitted), nor reasonable under the facts of this case.[4]

   B.   Unfair Discussions Were Held with Paragon

     1.   Corrective Action to Counter Bid Protest Allegations

Plaintiff argues that DOJ's conduct on remand "cannot be condoned [as it] imperils the integrity of the entire procurement." ECF No. 47 at 7. Further, plaintiff argues that "to sanction DOJ's conduct and permit the Paragon award to stand will set a troubling precedent that undermines the basic principles of corrective action and the federal procurement system." Id. at 6. The court agrees.

Centerra's protest, prior to the remand, alleged, in part, that the agency's technical evaluation of Centerra's proposal, and its best value decision in favor of Paragon, were arbitrary and capricious. See ECF No. 23-1 at 29-38, 44; First Amended Complaint, ECF No. 24 at 26-35. The government's motion to remand expressly noted that Centerra "argue[d] that DOJ did not properly evaluate [Centerra's] proposal." ECF No. 25 at 2. Remand was requested so that DOJ could "reconsider its award decision in light of the issues raised by Centerra." Id. During the remand, however, only Paragon was allowed to communicate any clarifications or revisions of its proposal to DOJ.

Defendant argues that it is perfectly acceptable, even under FAR Part 15, that an agency conduct discussions only with its putative awardee in response to a bid protest. ECF No. 43 at 28-30. The gaping hole in the government's argument is that there is

---

[4]     One of many distinctions between this case and IBM is that award "without discussions" was the default plan of action in that procurement, 119 Fed. Cl. at 158-59, whereas this procurement explicitly referenced the possibility that discussions would be held with some or all of the offerors, ECF No. 20-2 at 73. The same distinction regarding the solicitation language referencing discussions is present in Unisys and Distributed Solutions. IBM, 119 Fed. Cl. at 159 (citations omitted).

absolutely no precedent interpreting FAR Part 15 in this manner.[5]  Further, there is no fairness or equity in punishing a protestor by allowing its competitor to redress every flaw in its proposal, as pointed out by the protestor, so that the agency's award decision may withstand review.  This is not corrective action, but a mockery of fundamental fairness and competitive principles.

That the remand conduct here was patently unfair is apparent from any number of authorities.  Plaintiff cites Dubinsky v. United States, 43 Fed. Cl. 243 (1999), which is certainly analogous if not on all fours with this case.  A protestor prevails when the agency holds discussions with its awardee but not with the other offerors still in the running for award, because such conduct in unfair and inequitable.  Id. at 264.  Without these equitable constraints, "discussions with offerors readily would be subject to abuse." Id.

GAO precedent is consonant with Dubinsky.[6]  In Gulf Copper Ship Repair, Inc., B-293706.5, 2005 CPD ¶ 108, 2004 WL 3391799 (Comp. Gen. Sept. 10, 2004), for example, the GAO reviewed a post-protest corrective action which involved discussions with only the putative awardee.  Discussions, as explained by the GAO, "occur when the government communicates with an offeror for the purpose of obtaining information essential to determine the acceptability of a proposal or provides the offeror with an opportunity to revise or modify its proposal."  Gulf Copper, 2004 WL 3391799, at *5. Citing FAR 15.306, the GAO requires that if "a procuring agency holds discussions with one offeror, it must hold discussions with all offerors whose proposals are in the competitive range."  Id.  Because the putative awardee submitted a "six-page submission" regarding its past performance on relevant projects, discussions occurred with only the awardee and the protest was sustained.  Id. at *6.

Notwithstanding defendant's arguments to the contrary, the general pronouncement that corrective action need only be "reasonable under the circumstances and appropriate to remedy the impropriety" does not save DOJ's award to Paragon.  ECF No. 43 at 30 (citations omitted).  One of the cases the government cites for this proposition is instructive.  See Prof'l Serv. Indus., Inc. v. United States, 129 Fed. Cl. 190 (2016) (Professional Service).  After a successful protest at the GAO, an agency amended its solicitation in a way that greatly favored its initial awardee.  In the next bid protest in this court, the court commented that "rather than ensuring that an offeror's proposal

---

[5]     Under the circumstances of this procurement, the fairness requirements of FAR Part 15 are fully applicable, even in this FAR Subpart 8.4 task order competition.  In the alternative, the agency's conduct on remand also fails to meet the fairness requirements of FAR 1.102, 1.102-2, 1.602-2 and 8.405-2.

[6]     To the extent that Paragon argues that Dubinsky is a case with "outlier" facts, the same could be said of this case.  ECF No. 49 at 6.

conform strictly to the requirements of the solicitation, the agency has changed the solicitation to conform to an offeror's proposal." Id. at 206.  This court found that the agency had not engaged in "reasoned decision-making," set aside the corrective action, and sustained the protest. Id. at 206-07.  As in Professional Service, here DOJ did not engage in reasoned decision-making when it crafted a corrective action which informed Paragon of the flaws Centerra found in Paragon's proposal, and, through discussions, offered only Paragon the opportunity to revise and improve the competitiveness of its proposal.

Finally, the court observes that DOJ's conduct on remand would have been rejected as a proposed corrective action if it had been clear to the court that improper and inequitable discussions were contemplated by DOJ.  To ensure the fairness of the procurement process, this court rejected a proposed corrective action which excluded one of the eligible offerors from discussions.  See Chapman Law Firm Co. v. United States, 71 Fed. Cl. 124, 134-35 (2006) ("[T]he Court finds that [the agency's] proposed corrective action of reopening discussions and requesting an updated proposal from only one offeror lacks a rational basis and is contrary to law."), aff'd in relevant part sub nom. Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934 (Fed. Cir. 2007). Following Dubinsky, Gulf Copper, Professional Service and Chapman Law Firm, DOJ's engagement in discussions with Paragon, while refusing Centerra any opportunity to revise its proposal, violated the fundamental fairness requirements of the FAR.

2.    Discussions, Not Clarifications, with Paragon

Defendant and Paragon valiantly strive to characterize the communications with Paragon during the remand as clarifications, as did the agency.  See ECF No. 44 at 31-33; ECF No. 48 at 11 n.5; ECF No. 49 at 2-3.  This is not a close question, however.  While some of the communications with Paragon could indeed be classified as clarifications, there are at least two glaring examples of discussions (regarding [ ], and [ ] in the context of the Transition Plan) which provided Paragon with an opportunity to materially revise and modify its proposal.  Once these topics were raised with Paragon, discussions occurred.

Paragon's initial proposal submitted in May 2017 offered [ ], ECF No. 20-2 at 311; its final proposal of November 2017, after discussions, offered [ ] (the first year, with [ ] added each option year), ECF No. 20-5 at 166; whereas its remand-revised proposal, after discussions, offered [ ], presumably, again, at [ ], ECF No. 32-1 at 17.  Put another way, Paragon's overall price may not have changed between its final proposal and its remand-revised proposal, but the [ ] line item increased from $[ ] to $[ ], an increase of approximately $[ ].  The change to Paragon's proposal, based on discussions with DOJ, was prompted by Centerra's allegation that Paragon did not understand, at the time it submitted its final proposal in November 2017, that [ ] were not government furnished equipment and that each offeror was obliged to furnish, and maintain, enough [ ] for 111 posts staffed by the contractor.

This a material change to Paragon's proposal, not a <u>de minimis</u> change, and this revision shows that Paragon was afforded an opportunity to explain how its proposal would meet proposal requirements, despite a proposal line item that was non-compliant with the RFQ requirement.[7]  Paragon benefited from discussions, whereas Centerra was denied that opportunity.  The court will not examine all of the other changes to Paragon's proposal that occurred during the remand.  Instead, the court directs its focus to changes in Paragon's Transition Plan, a separately rated aspect of each offeror's proposal, which transpired during the remand.

Prior to the remand, Centerra challenged DOJ's [ ] of Paragon's Transition Plan, stating that Paragon's Transition Plan was unrealistic.  ECF No. 23-1 at 40-42.  Of particular concern to plaintiff was Paragon's [ ].  <u>Id.</u> at 40.  Centerra also questioned whether new employee processing delays were adequately addressed in Paragon's [ ], and whether two key personnel [ ], because their resumes in Paragon's proposal omitted any indication that these employees already [ ].  <u>Id.</u> at 41.

During the remand, Paragon was invited by DOJ to dispel any such concerns that might imperil its Transition Plan:

[ ].

ECF No. 32-1 at 18.

In Paragon's final proposal submitted in November 2017, [ ], for both incumbent (former Centerra staff) and new hires, were scheduled to take approximately [ ].  ECF No. 20-2 at 445.  In its remand revision to that proposal, Paragon explained that its processes for [ ] would indeed take more than [ ].  ECF No. 32-1 at 19.  Paragon also took advantage of this opportunity to explain how [ ] would be efficiently integrated into Paragon's Transition Plan.  <u>Id.</u> at 18-19.  Paragon's responses to DOJ questions during the remand, in addition, supplied biographical data for two key personnel which supplemented their resumes on the topic of [ ].  <u>Id.</u> at 19.  Paragon's lengthy responses to

---

[7]     Both defendant and Paragon rely on <u>Allied Tech. Grp., Inc. v. United States</u>, 649 F.3d 1320 (Fed. Cir. 2011) (<u>Allied Technology II</u>), to argue that Paragon's certification in its proposal that it would meet all proposal requirements excuses any errors in its proposal which cast doubt on Paragon's future compliance with the requirements of the RFQ.  ECF No. 44 at 30-31; ECF No. 48 at 17-18.  Here, however, in the case of the [ ], Paragon's final proposal did not comply with a requirement in the RFQ, and that facial non-compliance cannot be excused by a generic promise to meet RFQ requirements.  <u>See</u> <u>Allied Technology II</u>, 649 F.3d at 1330-31 (stating that facial non-compliance with solicitation requirements affects "the propriety of accepting the offer") (citations omitted).

DOJ's questions on remand show that Paragon materially revised its Transition Plan to address multiple flaws that Centerra pointed out in this bid protest.

As with the proposal revisions regarding [ ], DOJ, during its requested remand, allowed Paragon to revise its Transition Plan through discussions.  The court need not determine whether other communications with Paragon during the remand consisted of mere clarifications, or more substantive discussions.  Because DOJ entered into discussions with Paragon, but not with Centerra, the corrective action during the remand permitted by this court was unfair, inequitable, and violated fundamental fairness principles of the FAR.

3.     Centerra's Proposal's Lack of Weaknesses is Immaterial

To the extent that defendant and Paragon argue that the FAR permits discussions with only one offeror, during a corrective action taken in response to a bid protest, where the other remaining competitor's proposal contains no weaknesses, significant weaknesses or deficiencies, ECF No. 43 at 28-30; ECF No. 44 at 36-37, the court must disagree.  Discussions permit an offeror to revise its proposal, and in this case Centerra should have been afforded that opportunity once Paragon was given the chance to revise and improve its proposal.  This fairness principle (and long-standing FAR requirement) obtains whether or not Centerra's proposal contained significant weaknesses or deficiencies.  See, e.g., DMS All-Star Joint Venture v. United States, 90 Fed. Cl. 653, 672 (2010) ("[E]ach offeror within the competitive range must be afforded a 'similar opportunity' to revise its proposal [during discussions]." (quoting Dynacs Eng'g Co. v. United States, 48 Fed. Cl. 124, 136 (2000))).

Under a former version of the FAR, the GAO described the minimum threshold requirement of discussions, i.e., that the remaining offerors be permitted to update and revise their proposals:

> FAR § 15.610(b) [(1989)] requires that written or oral discussions be held with all offerors under a negotiated procurement who submit proposals in the competitive range.  The fundamental purpose of this requirement is to have offerors advised of deficiencies in their proposals and afforded the opportunity to satisfy the government's requirements through the submission of revised proposals.  FAR § 15.610(c)(2).  Detailed discussions need only be conducted with offerors whose proposals contain technical uncertainties.  Where the contracting officer does not identify any technical deficiencies in a proposal, discussions properly may be limited to an opportunity to submit revised proposals.  American KAL Enters., B-232677.3, Feb. 3, 1989, 89-1 CPD ¶ 112.

Fed. Data Corp., B-236265, B-236265.4, 90-1 CPD ¶ 504, 1990 WL 278050, at *4 (Comp. Gen. May 29, 1990).  This fairness principle, under different FAR provisions,

retains its vitality today.  See, e.g., Gen. Dynamics-Ordnance & Tactical Sys., B-401658, B-401658.2, 2009 CPD ¶ 217, 2009 WL 4023548, at *5 (Comp. Gen. Oct. 26, 2009) (condoning the exclusion of one offeror from a continuing round of discussions because this offeror's revised proposal contained "no technical weaknesses or deficiencies," but noting that this offeror was afforded, nonetheless, "the same opportunity to submit a final revised proposal"); see also Rotech Healthcare, Inc., B-413024, B-413024.2, B-413024.3, 2016 CPD ¶ 225, 2016 WL 4375710, at *6 (Comp. Gen. Aug. 17, 2016) ("Where, as here, an agency conducts discussions with one offeror, it must conduct discussions with all offerors in the competitive range." (citing FAR 15.306(d); Gulf Copper, 2004 WL 3391799, at *5)).  Once Paragon was permitted an opportunity to revise its proposal through discussions, it was inequitable to deprive Centerra of an opportunity to revise its proposal, as well.

      C.      Centerra Was Prejudiced by Unfair Discussions

          1.      Evaluation Scheme

DOJ employed a "best value" approach in this procurement.  ECF No. 20-2 at 73. For the prejudice inquiry, the court focuses on the elements of the evaluation scheme that were used by the agency to differentiate the proposals submitted by Paragon and Centerra, or that were the subject of discussions during the remand period, and then turns to the weight these elements were accorded by the RFQ.[8]  Of primary importance was the offeror's "Service Delivery Plan," described, generally, as the offeror's "ability to manage and perform the full range of services described in the RFQ at the indicated quality level."  Id. at 71.  The other technical aspect of proposals of most interest here, the Transition Plan, was described as the offeror's "ability to transition the work in an efficient and effective manner from the current contractor/contract to the proposed follow-on task order."  Id. at 72.  The RFQ stated that the agency would "consider, among other things, the plan's thoroughness, logical organization, and schedule."  Id. The Transition Plan was the least important of the four technical factors evaluated by DOJ.  Id.

The offerors were also informed that their unit prices would be tested for "realism and reasonableness," and that all option periods would be included in the overall price comparison of the proposals.  Id.  According to the RFQ, once the technical and price evaluations were complete, possibly augmented by discussions and the "[i]nformation obtained during discussions," the best value would be identified by the agency, as follows:

---

[8]      Because "Experience" and "Past Performance" were rated similarly, but not exactly the same, for each offeror, the court omits these aspects of the evaluation scheme from this brief review.

The Department will select the proposal that represents the best value to the government.  In deciding which GSA schedule vendor represents the best overall value, the Department will consider technical merit to be more important than the proposed price, but not significantly so.  That is, technical merit is important, but it must be cost effective.  The best value selection decision will be made as described below:

a) The total evaluated price will be the determining factor for award where all proposals are considered substantially equal from a technical merit standpoint.

b) If the Department determines that there are significant differences in technical merit among competing proposals, then a more expensive proposal may be selected for award where the Department determines that the value of the selected proposal is worth the price differential.

Id. at 73.

2.      Remand Ratings of Proposals Not Relevant to Prejudice Question

After discussions were held with Paragon during the remand, the Technical Evaluation Panel (TEP) met again and decided not to change any of its technical rating scores for the two proposals.  ECF No. 32-1 at 29.  There were, however, significant modifications of the narrative explaining those scores.  See, e.g., id. at 31-33 (quoting all of Paragon's responses provided during the remand discussions), 34 (adding to the narrative description of two strengths in Paragon's Service Delivery Plan), 40 (finding an additional strength in Centerra's Service Delivery Plan), 41-42 (adding a narrative section comparing the offerors' Service Delivery Plans, and finding "significant differences" in three areas), 43-45 (adding two charts, one a "comparison" of the offerors' approaches in the three areas of "significant differences," the other a staffing summary for each offeror).  Thus, although the offerors' technical scores did not fluctuate after discussions were held with Paragon during the remand, the underlying rationale for those ratings was fundamentally altered by the TEP.  Many of these changes appear to be attempts by DOJ to justify its award to Paragon in light of the arguments raised by Centerra in this bid protest.

There is a long line of precedent at the GAO which regards post-protest reevaluations of proposals to be of lesser probative weight, when those reevaluations are proffered by the agency as evidence that the protestor has not been prejudiced by the agency's procurement errors.  The agency typically argues that its procurement errors did not prejudice the protestor because a corrective reevaluation of proposals still arrives at the same award result.  See, e.g., Boeing Sikorsky Aircraft Support, B-277263, B-277263.2, B-277263.3, 97-2 CPD ¶ 91, 1997 WL 611539, at *11 (Comp. Gen. Sept. 29, 1997) ("It is on the basis of this post-protest reevaluation that the agency argues that

any errors in its process did not prejudice [the protestor].").  The GAO considers these reevaluations to be of less value than pre-protest proposal evaluations, in some circumstances, because the reevaluations were "made in response to protest contentions." Id. (citations omitted).  Analyses prepared "in the heat of an adversarial process . . . may not represent the fair and considered judgment of the agency, which is a prerequisite of a rational evaluation and source selection process."  Id.

Thus, although the latest technical evaluation from the TEP provides a record of the agency's current rationale for preferring Paragon's Service Delivery Plan to Centerra's, the court accords this document less weight than the technical evaluation of final proposals conducted in November 2017, for the purposes of determining whether Centerra was prejudiced by the agency's conduct on remand.  Indeed, the latest TEP report is the product of unfair and improper discussions with Paragon, which, in a but-for world, would not have occurred.  Bannum, 404 F.3d at 1353 (holding that prejudice is established if the protestor shows that, but for the errors of the procuring agency, the protestor had a substantial chance of award).  Thus, here the court focuses on the technical ratings of the parties' proposals in November 2017 to determine whether Centerra was indeed prejudiced by DOJ's procurement errors.

Turning to price, during the remand Paragon was directed to "not provide . . . [a] revised price proposal."  ECF No. 32-1 at 9 (emphasis added).  The court notes, however, that Paragon did change its price proposal as regards [ ].  See ECF No. 20-5 at 149, 166; ECF No. 32-1 at 17.  Only Paragon's overall price for the contract was not revised. Because in a but-for world Paragon's price proposal would not have been revised, the court will rely on the price evaluation of final proposals conducted in November 2017, unmodified by any revisions that Paragon supplied during the remand, for its prejudice analysis.  Similarly, the agency's latest best value determination, of April 5, 2018, is founded on a technical reevaluation of proposals -- conducted in the context of litigation -- based on improper discussions, as well as on an improperly revised price proposal from only one offeror.  For the prejudice inquiry, the court founds its analysis, instead, on the agency's best value determination of December 4, 2017.

3.     Award Without Errors

Applying the but-for test, the court finds that once the agency was alerted to the shortcomings in Paragon's proposal and its award decision which irrationally ignored those flaws, it had two rational, fair choices.  DOJ could have re-opened discussions with both offerors and allowed proposal revisions from both Centerra and Paragon.  Or, DOJ could have canceled the RFQ and started anew.  In either of these scenarios, Centerra, as the incumbent contractor, had a substantial chance of award.

Defendant and Paragon focus their prejudice arguments on the technical advantages of Paragon's proposal identified by DOJ, and the [ ] price difference between the proposals, which, in their view, together suggest that Centerra could not have revised

its proposal, through discussions, in a way that would have altered the best value determination of the agency.  ECF No. 43 at 35; ECF No. 44 at 34-36; ECF No. 48 at 14-15; ECF No. 49 at 9-11.  Defendant and Paragon thus contend that Centerra has not met its burden to show prejudice.  The court cannot agree.

First, the court notes that Centerra possessed enough information about the evaluation of its proposal, its price, Paragon's technical score advantage, and Paragon's price, to have revised its proposal in productive ways in a but-for world.  ECF No. 20-5 at 424-28.  Of course, Paragon, too, might have further revised its proposal and changed its price during fair discussions in a but-for world.  Cf. ECF No. 43 at 35 n.1 (arguing that DOJ had the discretion to disclose Centerra's price to Paragon if discussions were re-opened) (citations omitted).  The only certainty is that technical approach revisions and price revisions would have been fully available to Centerra and Paragon in fair discussions.  Given that Centerra is the incumbent contractor, and that its final proposal was [ ], had a [ ], and offered [ ], the court concludes that Centerra has met its burden to show that it had a substantial chance of award but for the agency's procurement errors.  ECF No. 20-5 at 172, 178, 227.

Second, the type of procurement error here, improper discussions, opens up a wider range of potential outcomes, if proper discussions were held with both offerors in a but-for world, than other types of errors whose correction would produce clearly measurable changes in the rating of a protestor's proposal.  As the GAO stated in Gulf Copper, "the record reflects that had the agency afforded Gulf Copper discussions regarding its proposed costs, in the same manner that it did with [the awardee] regarding its past performance, Gulf Copper's proposal [might] have become more competitive, such that there would be a reasonable possibility that the agency would have selected Gulf Copper for award."  2004 WL 3391799, at *7.  The prejudice analysis in these circumstances acknowledges that a substantial chance of award to the protestor exists even if the precise contours of the but-for world cannot be discerned.  See, e.g., Sytronics, Inc., B-297346, 2006 CPD ¶ 15, 2005 WL 3630188, at *7 n.8 (Comp. Gen. Dec. 28, 2005) ("Where an agency conducts discussions in a manner that favors one vendor over another, we will not speculate about the results had the agency conducted proper discussions and we will resolve any doubts concerning the prejudicial effect of the agency's actions in favor of the protester; a reasonable possibility of prejudice is a sufficient basis for sustaining the protest.") (citation omitted).

Third, DOJ's technical evaluation, price realism analysis, and best value determination would all have been revised in a but-for world.  The court notes here just a few of the variables that would affect this process.  Paragon's Transition Plan would have been accurately compared to Centerra's.  Paragon would have accounted for the [ ] it omitted from its final proposal, adjusted its price proposal accordingly, and DOJ's price realism analysis necessarily would have been modified as a result.  Revised prices from Centerra and Paragon would have been compared, and, depending on distinctions

between the revised technical approaches of the two offerors, a new, and necessarily revised, best value determination would have resulted. Given these variables, Centerra has shown prejudice from the agency's procurement errors. See, e.g., Gentex Corp. v. United States, 58 Fed. Cl. 634, 654 (2003) (finding prejudice where the only other technically acceptable offeror was the victim of improper discussions which favored the awardee).

IV.    Injunctive Relief Factors

Centerra has prevailed on the merits of its protest, because DOJ's improper discussions with Paragon during the remand, and its best value determination based on those improper discussions, were inequitable and unlawful. Thus, plaintiff has satisfied the first of the four injunctive relief factors.

Centerra has also shown that the loss of the opportunity to fairly compete for this contract constitutes irreparable harm in the circumstances of this protest. See, e.g., BayFirst Sols., LLC v. United States, 102 Fed. Cl. 677, 696 (2012) ("The court considers the loss of potential profits from a large government contract award, in this instance, to constitute irreparable harm." (citing ViroMed Labs., Inc. v. United States, 87 Fed. Cl. 493, 503 (2009))). Therefore, the second injunctive relief factor has also been met.

Turning to the third injunctive relief factor, the court considers the balance of hardships. As a general rule, this court "tends to weigh the balance of hardships factor in favor of the protestor who has succeeded on the merits, unless specific facts counsel otherwise." See id. (citing Cardinal Maint. Serv., Inc. v. United States, 63 Fed. Cl. 98, 110-11 (2004)). Here, the facts weigh in favor of plaintiff.

The government did not allege that it would be harmed by an injunction, and omitted any discussion of this factor in its briefs.[9] Paragon alleges that it would be harmed by losing an award "it won fair and square." ECF No. 44 at 45. But, as the court has held, the reaffirmed award to Paragon was not won through fair procedures. The harm to Centerra of losing a fair opportunity to compete outweighs any harm suffered by the government or Paragon. The third injunctive relief factor has been satisfied as well.

Finally, in the court's view, the public interest in this case is unquestionably in favor of maintaining the integrity of the procurement system by enjoining the improper procurement actions of the agency. Such conduct destroys the public trust in government

---

[9]    The government, at the outset of this protest, took into account the risk of an injunction of performance under the task order and indicated that it considered a voluntary stay of the transition to be of little use, because a resolution of the bid protest before the transition was complete would achieve much the same result. See Scheduling Conference Recording, ECF No. 9.

contracting and deprives the government of the benefits of full and open competition.[10]
See, e.g., Metcalf Constr. Co. v. United States, 53 Fed. Cl. 617, 645 (2002) (noting the
twin goals of preserving "public confidence and competition in the federal procurement
process") (citation omitted).  The court concludes that the fourth injunctive relief factor
has also been met.

V.    Conclusion

This bid protest is **SUSTAINED** for the reasons stated in this opinion.
Accordingly,

(1)    No objections having been received to making the court's initial scheduling
conference recording in this matter public, the clerk's office is directed to
**UNSEAL** the digital recording of the court's proceeding held on February
14, 2018, ECF No. 9;

(2)    Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 23,
is **DENIED** as moot;

(3)    Plaintiff's Post-Remand Motion for Judgment on the Administrative Record,
ECF No. 39, is **GRANTED**;

(4)    Defendant's Cross-Motion for Judgment upon the Administrative Record,
ECF No. 43, is **DENIED**;

(5)    Intervenor-Defendant's Cross-Motion for Judgment upon the Administrative
Record, ECF No. 44, is **DENIED**;

(6)    The United States, by and through the Department of Justice, its officers,
agents, and employees, is hereby **PERMANENTLY RESTRAINED AND
ENJOINED** from obtaining performance from Paragon Systems, Inc. on
Task Order **15JPSS18-FPZM000031** under **RFQ DJJU-17-RQ-1036**;

---

[10]    Although the disclosure of Paragon's price is unfortunate and may affect the
competition for this task order, there is a higher public interest in correcting the
procurement errors identified in this opinion.  See, e.g., Matthews Grp., Inc. t/a TMG
Constr. Corp., B-408003.2, B-408004.2, 2013 CPD ¶ 148, 2013 WL 3187320, at *4
(Comp. Gen. June 17, 2013) ("We have repeatedly observed that the possibility that the
contract may not have been awarded based on the most advantageous proposal has a
more harmful effect on the integrity of the competitive procurement system than does the
possibility that the original awardee, whose price has been properly disclosed, will be at a
disadvantage in the reopened competition.") (citations omitted).

further, any award of a task order under **RFQ DJJU-17-RQ-1036** must be preceded by fair and impartial discussions and an equal opportunity to submit proposal revisions by both offerors;

(7)     The clerk's office is directed to **ENTER** final judgment in favor of plaintiff; and,

(8)     On or before **June 15, 2018**, the parties shall **CONFER** and **FILE** a **Proposed Redacted Version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out.

IT IS SO ORDERED.

s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Judge